Brinkerhoff, J.
I concur in the decree dismissing the bill. And though I am not prepared to say that I dissent from the view of the case taken by the majority of the court, yet I would prefer that the case should be disposed of on the grounds which I will briefly state:
In the statement of the case, as given by brother Sutliff, it will be seen that the bill seeks to enforce an alleged trust estate, in the one hundred acres of land described, in favor of the complainants; and this trust is claimed to result from the alleged fact that the land was purchased and paid for with money belonging to the estate of Clark Tucker, and bequeathed by him to the complainants.
*388 Now, if the money with which the land was bought was not the 'money of Clark Tucker, then, there is no trust in favor of complainants in the land. This is clear. The question, then, whose was the money with which this land was bought? lies at the foundation of this case. Was it the money of Clark Tucker or of his estate ? If it was not, then there can be no pretense of a trust, and the bill must be dismissed.
*In considering the case it is important to bear in mind that the complainants are not in a court of law, asserting legal rights, but have appealed to a court of equity, claiming to establish and enforce equities. Their claims, then, are to be viewed and adjudged in the light of the principles of equity ; and these principles must be applied to the preliminary question: whose money paid for the land ? as well as to every other question which can-arise in the case.
In equity, then, whose was the money which paid for the land ?' We are agreed that the evidence satisfactorily shows that the land was bought and paid for with money in the hands of Clark Tucker at the time of his death, and which, without consideration, had been received by him from his brother, Hope Tucker, and held in secret and fraudulent trust for the sole purpose, mutually understood between them, of defrauding the creditors of Hope, and to> be ultimately returned to Hope.
Now, on familiar elementary principles, no court of equity would have enforced this fraudulent trust in favor of Hope, as against Clark Tucker — not because Hope had no equity against Clark — not because Clark was entitled in equity and good conscience to keep-the money as his own — not -because it was in equity his — for the contrary of all this was true — but, because ex turpi causa non oritur actio — because the transaction out of which the trust arose being-contrary to good morals, it would he inconsistent with public policy and with the dignity of a court to befoul its hands with the case by any affirmative action in favor of either of the guilty parties; but the court would leave them and their affairs where their own acts or accidental events had placed them. See the remarks of Lord Mansfield in Holman v. Johnson, Oowp. 341, quoted in Broom’s Legal Maxims, 578, 579. On the other hand, had Hope Tucker merely agreed to transfer his property to his brother Clark for the purpose of defrauding his creditors, with a secret trust that it should be returned to him when danger from his creditors had *389 blown over, and had this contract remained unexecuted, a court of equity would refuse to enforce it, not only for the reasons before mentioned, but for the additional reason that such a contract, whether executed *or unexecuted, could never confer on Clark any equity whatsoever as against Hope Tucker. As against him his claim or title would always be against reason and conscience.
As between the parties to such illegal transactions and those who claim under them, we, as a court of equity, can not interfere, from regard to what is due to our own character and to the morals and policy of the law; we are compelled to inertia; but our being necessarily inert, it seems to me, constitutes no good reason why we should be voluntarily blind. W.e are at liberty to see, if not to do; and it requires us but to open our eyes to see that, in equity and good conscience, and as against Hope Tucker, or those who claim under him, Clark Tucker never owned this money. His money never paid for the land in controversy. Of course, then, the foundation fact on which the trust is claimed to arise, is not proved; and, by dismissing the complainants’ bill, we leave the parties where we find them; and this without having anything to do with the illegal transactions of the personages respectively under whom they claim, except to look at and inspect them so far as to ascertain their true character.
It is true, I know no case quite analogous to this in its facts and circumstances, but it comes so clearly, as it seems to me, within the scope of familiar, well settled, and just principles, that I can see no reason why they should not, without hesitation, be applied. And I should prefer to dispose of the case on these principles, as we thereby go to the bottom of the transaction, leave the parties to their strict legal rights, and, by precluding the idea that any equities can exist in favor of those who claim under Clark Tucker as against those who claim under Hope, either in the land or in the fund with which it was purchased, cut off the possibility of future litigation on the ground of supposed equities.